The opinion of the court was delivered by
Tilghman, C. J.
It docs not appear that the directors ever made an express agreement to be personally responsible to each other for their respective proportions of the money borrowed of the bank in case the company should prove insolvent. The counsel for the plaintiff offered to prove “ by the acknowledgments and admissions of several of the parties to the note of the 9th March, 1813, that the drawer and indorsers had agreed to be responsible to each other for their respective proportions of the said note, in case the funds of the company should not be sufficient to pay the *81 same.” This evidence was objected to by the defendants’ counsel and rejected by the court. The argument in favour of the evidence is, that the confession of one partner is evidence against another. Certainly it is,- but it must first be proved that a partnership existed. The defendant denied the partnership, and I see no evidence of it. The drawer and indorsers were directors of the turnpike company, but that is no partnership. Neither is it a partnership, to put their names on the same negotiable paper. To say that it is, is begging the question. The persons whose confessions were offered in evidence, were Competent witnessess for the plaintiff and one of them, William, Hamilton, actually was a witness as appears by his deposition. There was no ground therefore for admitting their confessions, without oath, as evidence against the defendants.
The second bill of exceptions was to the rejection of the following part of the deposition of William Hamilton. “ I always understood that the managers were bound in honour to each other, and thatthey were individually responsible to each other for the money borrowed from the bank. When Mr. Slaymaker and Mi*. White called on me to know whether I would agree to pay my proportion of the loss or deficiency, I told them I did not wish them to lose, and although I was not on the note I would pay my proportion; that the said deponent then paid off his share.” It was clearly right to reject this evidence. The defendants are not to be affected by Mr. Hamilton’s ideas of honour. Courts of justice know of no other than legal engagements. The jury are permitted to hear of none other. It would be worse than waste of time, for the court to suffer evidence to go to the jury one minute, and to tell them the next that they were to pay no regard to it. There was another part of Mr. Hamilton’s deposition also very properly rejected. It contained the relation of a conversation between Mr. Hamilton and Henry Keffer, which in no point of view could be evidence, and I think was abandoned in the argument.
The remaining exceptions are to the opinion of the court, on four questions proposed by the counsel for the plaintiff. The whole may be reduced to two points, 1st. In what relation did the drawer and indorsers of this note for 500 dollars of the 9th November, 1S13, stand towards each other? was there any responsibility between them in case of loss, supposing that there was no express agreement to that purpose? 2d. What was theeffectof the renewal, as itis called, of the note of 9th November, 1813, of which Gundacker was an indorser, by that of the 11th January, 1814, of which he was not an indorser. In considering these questions, it is always to be kept in view, that the money was borrowed for the use of the Turnpike Company, and applied to the payment of its debts. The drawer and indorsers of the note of November, 1813, therefore, were, with respect to each other, in the nature of securities for the company. And as such there can be no doubt, that in the absence of all special agreement, there existed between them a mu *82 tual responsibility in case of loss. The principle of contributicm arose, from the nature of their situation. It is plain law, that where three are bound in a bond as principal, and two as sureties, if the principal prove insolvent, and one of the sureties pay the whole, he may call on the other for contribution of a moiety. And it makes no difference whether they are bound jointly, or severally, or jointly and severally. Nay, so far has this principle been carried, that where one was bound in three several bonds, with one several surety in each, for the faithful performance of his trust in a public office, the sureties were held liable to mutual contribution, in proportion to the penalty of each bond, in case of loss by the insolvency of the principal. This was decided in the case of Sir Edward Decring v. Earl of Winchelsea and others, 2 Bos. & Pull. 376. And that the right of contribution existed between all the parties to the note of the 9th November, 1813, was the opinion of the judge of the District Court, in the case before us, in which I perfectly agree with him. But he fixed a limit to this responsibility to which I cannot agree. He confined it to the case of payment being compelled by the bank. I can see no reason for this limitation. The parties were all bound to the bank, why then might not one of them pay it, without compulsion? Suppose, for instance, when the note of the 9th November, 1813, fell due, Mr. Gundacker had said, he would have nothing to do with the renewal of it, why might not Slaymaker have paid it, and called on Gundacker for his proportion? Why should he submit to loss of money and character, by waiting for a suit by the bank? If indeed the other parties had chosen to discharge Slaymaker, and take all responsibility on themselves by renewing the note without him, they might have done so, and then he ought not to have paid it, but nothing of the kind is pretended. I have no doubt then, that if Gundacker had refused to join in the indorsement of a new note, the parties to the old one might have paid it, and recovered from him his proportion. This leads to the second question. What was the effect of the note of 11th January, 1814, drawn by Slaymaker, and not indorsed by Gundacker? Was it payment, or prima facie evidence of payment of the note of 9th November, 1813. The District Court thought not, and there again we differ in opinion. The cashier of the bank was called as a witness, and declared that it was considered by the bank as payment, and no doubt it was so. It is generally called a renewal of the old note, but in strictness it is a payment. When the new note is offered for discount, a new loan is created, a new discount is paid, the drawer of the new note is credited by the new loan, and charged with the amount of the old note, which is given up to him. Thus the debt on the old note is completely extinguished, and both drawer and indorsers discharged for ever. I think the District Court was wrong then, in saying that there was no evidence of payment. But it was right, in not going all the length contended for by the counsel for the plaintiff, who asked the court to charge the jury that the acceptance of the note *83 of the 11th January, 1814, by the bank, was in itself conclusive evidence, which entitled the plaintiffs to a recovery. Whether they were entitled to a recovery would depend upon circumstances. Why was not Gundacker an indorser of the note of 11th January, 1S14? Was it accidental, or was it intended by S'aymaker and the others, and understood by Gundacker himself, that he was to be discharged. I believe that things often take this course, when directors of turnpike and other companies, borrow money from banks for the use of the company. New directors sometimes come in, who put their names on the renewed notes, in the place of the old directors who go out. Where there is no positive agreement, the jury will judge from the conduct of the parties. When a director who has once been on a note, is suffered to withdraw himself, and the notes are renewed from time to time for a considerable period, without any intimation to him that he is held responsible, much may be said in favour of his discharge. There would be great reason in such case, to suppose, that there was an understanding, that the parties to the new note were to take the responsibility on themselves, and look to the funds of the company for indemnification. On the contrary, where his indorsement is omitted by accident, (such as his not happening to be present when the new note is drawn,) and .he is soon told that he is held responsible for his proportion, I do not see on what principle he can escape. My opinion is, therefore, that in this case the jury should have been told that tjie acceptance of the note of the 11th January, 1814, by the bank, was evidence of the payment of the note of 9th November, 1813; and it should have been left to the jury to decide, from the facts in the case, whether or not Gundacker was discharged, or held responsible for his proportion.
There was no declaration filed in this case, but a statement of the plaintiff’s case under our act of assembly. It was objected, that it varied from the evidence in this, that it set forth a positive agreement for mutual responsibility, between the drawer and indorsers of the note given by the directors to the bank. The objection is not good. The plaintiff has a right to averio his statement that an agreement was made, in all cases where the law implies an agreement; justas he may do in a declaration at common law. In an action on an implied assumption, the declaration avers a positive assumption. It was the object of the act of assembly to dispense with form. When the plaintiff states that there was an agreement, he must prove it. But whether he prove an agreement express or implied, is immaterial. In either case he makes good his assertion. I am of opinion upon the whole, that this judgment should be reversed, and a venire de novo awarded.
Judgment reversed and a venire facias de novo awarded.